

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2005

# Lieberman v. Cambridge Partners

Precedential or Non-Precedential: Precedential

Docket No. 04-3079

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lieberman v. Cambridge Partners" (2005). *2005 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 04-3079 & 04-3869
_____

IRVIN S. LIEBERMAN,
and all others similarly situated,
                          Appellant at No. 04-3079

vs.

CAMBRIDGE PARTNERS, L.L.C.;
J.B. HANAUER & CO.


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 03-cv-02317)
District Judge: Honorable Cynthia M. Rufe
_____

L-3 COMMUNICATIONS CORP.
                          Appellant at No. 04-3869
                     vs.

WAYNE CLEVENGER, LARRY COLANGELO, JOHN
FLEURY, EDWARD GORMAN, MIDMARK CAPITAL,
L.P., MIDMARK ASSOCIATES, INC., MILAN

RESANOVICH, JOSEPH ROBINSON and PAUL
TISCHLER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 03-cv-03932)
District Judge: Honorable Anita B. Brody

_____

Argued: September 26, 2005
_____

Before: RENDELL, FUENTES, and GARTH, *Circuit Judges*

(Opinion Filed:  December 27, 2005)
_____

OPINION OF THE COURT
_____

John F. Innelli, Esquire (Argued)
INNELLI ROBERTSON
1818 Market Street, Suite 3620
Philadelphia, PA 19103

*Attorney for Appellant Irvin S. Lieberman,*
*and all others similarly situated*


Matthew J. Siembieda, Esquire (Argued)
Carl M. Buchholz, Esquire

Timothy D. Katsiff, Esquire
Evan H. Lechtman, Esquire
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

Mark D. Simon, Esquire
L-3 COMMUNICATIONS CORP.
1 Federal Street
Camden, NJ 08103

*Attorneys for Appellant L-3 Communications Corp.*

Lawrence M. Rolnick, Esquire
Thomas E. Redburn, Jr., Esquire (Argued)
LOWENSTEIN SANDLER, PC
65 Livingston Avenue
Roseland, NJ 07068

Robert N. Feltoon, Esquire
Jacquelyn J. Ager, Esquire
CONRAD O'BRIEN GELLMAN & ROHN
1515 Market Street, 16th Floor
Philadelphia, PA 19102

*Attorneys for Appellee J.B. Hanauer & Co.*

Alexander Kerr, Esquire (Argued)
Gregory J. Hindy, Esquire
McCARTER & ENGLISH, LLP
Mellon Bank Center
1735 Market Street, Suite 700

Philadelphia, PA 19103-7501

*Attorneys for Appellees Wayne Clevenger, Larry Colangelo, Joseph Robinson, Midmark Capital, LP, and Midmark Associates, Inc.*

John F. Smith, III, Esquire
Charles L. Becker, Esquire
REED SMITH LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

Mark D. Powers, Esquire
Matthew H. Charity, Esquire
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103

*Attorneys for Appellees John Fleury, Edward Gorman and Paul Tischler*

Lewis D. Prutzman, Esquire
Ralph A. Siciliano, Esquire
TANNEBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, NY 10022

*Attorneys for Appellee Milan Resanovich*

Garth, *Circuit Judge*.

In these two cases, which have been consolidated on appeal, plaintiff-appellants Irvin S. Lieberman ("Lieberman")[1] and L-3 Communications Corp. ("L-3") instituted federal securities fraud actions after the enactment of Section 804 of the Public Company Reform and Investor Protection Act of 2002 ("Sarbanes-Oxley").[2] That provision extended the applicable limitations period for private securities fraud claims from the earlier of *one* year after discovery of the wrongdoing or *three* years after the unlawful transaction[3] to the earlier of *two* years after discovery or *five* years after the unlawful transaction. *See* § 804(a).

Section 804 of Sarbanes-Oxley applies to all proceedings "commenced on or after" its enactment date, or July 30, 2002. § 804(b). Were Section 804 applicable here, as Lieberman and L-3 contend, the two actions would be timely, as they were filed within the 2-and-5-year limitations structure. Both actions, however, had earlier been time-barred under the then-applicable 1-and-3-year limitations scheme, inasmuch as the alleged

---

[1] As noted below, Lieberman filed a class action complaint on behalf of all others similarly situated.

[2] Pub.L. No. 107-204, § 804, 116 Stat. 745, 801 (2002) codified in part at 28 U.S.C. § 1658(b). For ease of reference, throughout this opinion we will refer to the amended statute of limitations provision as § 804 rather than 28 U.S.C. § 1658(b).

[3] The pre-Sarbanes-Oxley 1-and-3-year limitations period for private securities fraud actions was established by the United States Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991).

wrongdoing in each case occurred approximately four years before the enactment of Section 804. Put simply, while the actions were filed after the enactment of Section 804, they were already extinguished by then.

At issue in these cases is whether the amended limitations period of Sarbanes-Oxley revives previously expired securities fraud claims. We hold that it does not, and in doing so, join the other courts of appeals that have addressed this same question. *See In re Enterprise Mortg. Acceptance Co., LLC Sec. Litig.*, 391 F.3d 401, 406 (2d. Cir. 2005) (holding that Sarbanes-Oxley does not revive stale claims); *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005) (same); *In re ADC Telecomm., Inc. Sec. Litig.*, 409 F.3d 974, 978 (8th Cir. 2005) (same). Accordingly, we will affirm the District Courts' respective orders dismissing the actions.

I.

The facts relevant to the disposition of these appeals – *i.e.*, those pertaining to the timing of events – are not contested. We recount them below.

A.    *Irvin S. Lieberman*

On or about April 14, 2003, Irvin S. Lieberman filed a putative securities fraud class action against J.B. Hanauer & Company ("Hanauer") in the United States District Court for the Eastern District of Pennsylvania.[4] In effect, Lieberman alleged

---

[4] Lieberman also named Cambridge Partners, L.L.C. as a defendant. Lieberman, however, never served process upon Cambridge, apparently because Cambridge has ceased to exist as a corporate entity. The District Court dismissed Lieberman's claims against Cambridge without prejudice for failure to effect

that Hanauer, as underwriter of certain debt securities issued in a public offering on April 21, 1998, induced investors to purchase the securities by misrepresentation, deceit and fraud, in contravention of the federal securities law. Lieberman claimed that the investors became aware of the alleged misrepresentations only in March 2003.

The complaint was subsequently amended, and thereafter, Hanauer moved to dismiss the amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Hanauer argued, *inter alia*, that all of Lieberman's claims were time-barred as of April 21, 2001, three years after the date of purchase (April 21, 1998). Lieberman argued that his claims, filed within five years of the date of purchase, were timely under the extended limitations period of Sarbanes-Oxley. He argued that the amended limitations scheme was applicable because he instituted the action on April 13, 2003, and hence after Sarbanes-Oxley's effective date of July 30, 2002.

The District Court granted Hanauer's motion and dismissed the amended class action complaint in its entirety, declining to apply Sarbanes-Oxley to revive Lieberman's expired claims.[5] Lieberman appealed.

---

service of process. Cambridge is not a party to the present appeal.

[5] In the amended class action complaint, Lieberman asserted claims under sections 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77l, 77o, in addition to claims under Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5") and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j; 78t. We forebear from a detailed description of Lieberman's claims, inasmuch as the threshold issue of

B.    *L-3 Communications Corp.*

On July 1, 2003, L-3 Communications Corp., a leading merchant supplier of secure communications technology and other similar products, filed a securities fraud action in the United States District Court for the Eastern District of Pennsylvania, naming as defendants various officers and shareholders of SPD Technologies, Inc. ("SPD Technologies") and a wholly-owned subsidiary, SPD Electrical Systems, Inc. ("SPD Electrical").  SPD Electrical is a manufacturer of circuit breakers and switchgear for the United States Navy's nuclear submarines and surface ships.

As relevant here, the complaint, advancing claims under both federal and state law, alleged that on August 13, 1998, L-3 entered into a merger agreement with SPD Technologies and Midmark Capital, L.P., a majority shareholder of SPD Technologies, whereby L-3 purchased all outstanding shares of SPD Technologies.  The complaint further alleged that the defendants engaged in a deceptive scheme designed to (1) induce L-3 to pay an artificially high purchase price for the company through material misrepresentations and (2) conceal the fraudulent scheme.  L-3 claims not to have discovered this scheme until January 2002.  The defendants moved to dismiss the complaint, arguing, *inter alia*, that the federal securities

---

limitations/repose cuts across all the claims. Concluding, as we do, that Sarbanes-Oxley does not revive expired securities fraud claims, we find it unnecessary to consider other issues presented by Lieberman specific to the nature of the individual claims, and dealt with by the District Court.

fraud claims were time-barred after August 13, 2001, three years from the date of the merger (August 13, 1998).

In a thorough and closely-reasoned opinion, Judge Brody granted the defendants' motion and held that Sarbanes-Oxley, contrary to L-3's contentions, did not overcome the strong presumption against revival of time-barred claims, especially where those claims had been extinguished by a statute of repose. Under the then-applicable 1-and-3-year limitations scheme, Judge Brody concluded, L-3's claims had expired on August 13, 2001, three years after the date of the merger and nearly one year before the enactment of Sarbanes-Oxley. Judge Brody declined to exercise supplemental jurisdiction over the remaining state claims.[6] This appeal followed.

## II.

Lieberman and L-3 now ask us to reverse the decisions below, which held that the extended limitations period of Sarbanes-Oxley did not apply to revive their expired federal securities fraud claims. Because both cases involve the identical legal issue, the parties submitted a Joint Motion for Consolidation for Purposes of Disposition. The Court granted that motion on November 5, 2004.[7]

We have jurisdiction over the District Courts' final orders dismissing the respective actions pursuant to 28 U.S.C. § 1291.

---

[6] L-3 does not appeal the District Court's decision to decline the exercise of supplemental jurisdiction over its state law claims.

[7] While Lieberman and L-3 sometimes raise different arguments, we hereinafter assign their respective arguments to "Lieberman and L-3" collectively.

Our review is plenary. *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 684 (3d Cir. 1991) ("This question is purely one of statutory construction which implicates our plenary standard of review.").

## III.

## A.

Prior to the enactment of Sarbanes-Oxley, 28 U.S.C. § 1658(b), there was no congressionally created limitations period for federal securities fraud claims arising under section 10(b) of the Exchange Act. As a result, in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), the Supreme Court held that litigation instituted pursuant to section 10(b) and Rule 10b-5 must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation, as statutorily prescribed for express causes of actions contained in the Exchange Act and the Securities Act. *Id.* at 362. The *Lampf* Court viewed the 3-year limit as a "period of repose," intended to impose an "outside limit" not subject to tolling principles. *Id.* at 363 (citation omitted). As the Supreme Court stated:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling . . . Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

*Id.*

As part of Sarbanes-Oxley, enacted on July 30, 2002, Congress amended the 1-and-3-year limitations scheme for private securities fraud actions, previously established by the

Supreme Court in *Lampf.* Section 804 of Sarbanes-Oxley provides:

> (a) . . . [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. [§] 78c(a)(47)), may be brought not later than the earlier of-
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.
>
> (b) EFFECTIVE DATE.-The limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, *shall apply to all proceedings addressed by this section that are commenced on or after the [July 30, 2002,] date of enactment of this Act.*
>
> (c) NO CREATION OF ACTIONS.-Nothing in this section shall create a new, private right of action.

Public Company Accounting Reform and Investor Protection Act of 2002, Pub.L. No. 107-204 § 804, 116 Stat. 745, 801, codified in part at 28 U.S.C. § 1658(b) (emphasis added).

Both Lieberman and L-3 maintain that Section 804 of Sarbanes-Oxley applies retroactively to their claims, thus extending the relevant repose period to five years after the alleged fraudulent transactions.[8] They rely on the effective date

---

[8] The discovery dates are immaterial to these appeals, as the relevant period of repose ended earlier in both instances. *See Lampf,* 501 U.S. at 364 (holding that litigation instituted

-11-

provision of the statute, which provides that "this section, shall apply to all proceedings . . . that are commenced on or after [July 30, 2002]." § 804(b).  Both submit that they filed their actions after July 30, 2002, which, they claim, brings their actions within the purview of the new statute.  Section 804 would extend the respective filing deadlines to April 21, 2003 for Lieberman and August 13, 2003 for L-3.  The actions are timely if, and only if, Section 804 is applicable.[9]

The Appellees, on the other hand, contend that *Lampf* provided the governing limitations structure for private securities fraud claims at the time of the alleged fraudulent conduct in each case.  They further contend that Lieberman's and L-3's claims had been extinguished by the then-applicable 3-year period of repose prior to the enactment of Sarbanes-Oxley.  The Appellees submit that Congress never intended for Sarbanes-Oxley to apply retroactively to revive claims already extinguished by a statute of repose.

The question we must decide, then, is whether Section 804 effectuates this resurrection of moribund securities fraud

_____

pursuant to section 10(b) and Rule 10b-5 must be commenced "within one year after the discovery of the facts constituting the violation *and within three years after such violation*") and § 804 (b) (providing that actions may be "brought not later than the *earlier* of" 2 years after discovery or five years after the violation) (emphasis added).

[9] For Lieberman, the relevant dates are: (1) the fraud occurred on April 21, 1998, the date of the public offering, and (2) he filed the original complaint on April 14, 2003.

For L-3, the relevant dates are: (1) the fraud occurred on August 13, 1998 when the merger occurred, and (2) L-3 filed its complaint on July 1, 2003.

claims. We now turn to its resolution.

## B.

We begin our analysis with a clarification of the question presented. Retroactive application of a new statute, such as Section 804, occurs whenever the statute is applied to causes of action already accrued prior to its enactment date. *See Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) ("The 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'") (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). But that description, while accurate, is nonetheless imprecise, at least for present purposes.

Section 804 of Sarbanes-Oxley may be applied retroactively to two separate categories of cases. First, it is possible to give Section 804 retroactive effect by applying it to all claims that have accrued *but have not yet expired* as of the enactment date (July 30, 2002). Second, it is equally possible to apply Section 804 retroactively to *revive* already expired claims, an entirely separate category of cases. The Eighth Circuit Court of Appeals has explained the distinction as follows:

> Providing that a statute of limitations should be "applied retroactively" is a broad brush approach to what is actually a more specific inquiry. Retroactive application can reach two categories of cases: first, a group on which the statute has not run at the time the statute is amended; and second, cases on which the existing statute has run at the time of amendment. The second group is affected not only by questions of the retroactive application of the statute, but also by the need to consider the question of revival of barred claims.

-13-

*Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 615 (8th Cir. 1995) (holding that amendment to state limitations statute applied retroactively but did not revive time-barred actions). The present appeals fall into the second group of cases.

Here, we decide only whether Congress intended for Section 804 to revive already expired securities fraud claims. We do not decide the broader question, not presented by these appeals, whether Congress intended Section 804 to have a general retroactive effect. Though related, the two questions are analytically distinct, requiring separate inquiries into congressional intent. We are mindful of that distinction in applying the well-established principles that govern our retroactivity determination. *See Martin v. Hadix*, 527 U.S. 343, 362 (1999) (Scalia, J., concurring) (noting that the key question is "retroactive in reference to what?").

C.

The Supreme Court has frequently noted that there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Landgraf*, 511 U.S. at 265. The presumption arises because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* Consequently, "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

In *Landgraf v. USI Film Products*, the Supreme Court set forth a two-part test for determining whether a particular statute applies retroactively. 511 U.S. at 280. At the first stage, a court must determine if Congress has expressly prescribed the

statute's intended reach. *Id.* If Congress has done so, the inquiry ends, and the court enforces the statute as it is written. *Id.* If the statute is ambiguous or contains no express command, a court must examine whether the statute would have an adverse effect if it were held to be retroactive; that is to say, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute would do any of these things, it will not be applied retroactively, "absent clear congressional intent" to the contrary. *Id.*[10]

---

[10] As later distilled by this Court, *Landgraf* and its progeny establish the following principles that courts must employ in retroactivity determinations:

> 1. There is a strong presumption against applying a statute in a manner that would attach new legal consequences to events completed before the statute's enactment, *i.e.*, a manner that would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties.
> 2. If Congress has focused on the issue, has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness, and has provided unambiguous evidence of its conclusion by directing that retroactive effect be given, then, *and only then*, will the presumption be overridden.
> 3. Consistent with these principles, normal rules of statutory construction may apply to remove . . . the possibility of retroactivity. Nothing short of an unambiguous directive, however, will justify giving a statute a retroactive effect. Thus, when normal rules of statutory construction indicate that a statute is intended to be applied in a manner involving no retroactive effect, a Court need inquire no further. On the other hand, if

-15-

### 1. *Congressional Intent*

In accordance with *Landgraf*, we first look to the plain language of Section 804 of Sarbanes-Oxley. Section 804(b) states that the revised statute of limitations "shall apply to all proceedings addressed by this section that are commenced on or after the [July 30, 2002] date of enactment." Lieberman and L-3 contend that this provision clearly expresses the temporal scope of the statute, and that the statute applies to all claims, even previously expired ones, filed after the date of enactment. That contention is a plausible one, but it is just as plausible to read the provision as applying to all claims *that are still viable and not previously extinguished*, filed after the date of enactment. Even assuming, without deciding, that Section 804(b) clearly provides for retroactive application, it does not necessarily follow that Section 804(b) thereby clearly provides for the resurrection of moribund claims.

In addition, Lieberman and L-3 read Section 804(b) in isolation. In our view, however, Section 804(b) must be considered together with Section 804(c), which provides that "[n]othing in this section shall create a new, private right of action." *See U.S. v. Morton*, 467 U.S. 822, 828 (1984) ("We do not . . . construe statutory phrases in isolation; we read statutes

---

such construction suggests that a retroactive effect may have been intended, the traditional presumption nevertheless bars retroactive application unless an unambiguous congressional directive is found.

*In re Minarik*, 166 F.3d 591, 597-98 (3d Cir. 1999) (considering retroactive application of AEDPA's gatekeeping provisions) (citations and internal quotation marks omitted). Our decision today is in accord with these principles.

as a whole."). Section 804(c) creates, at a minimum, ambiguity as to the temporal reach of the statute.

Application of Sarbanes-Oxley to Lieberman's and L-3's claims, previously extinguished by the 3-year statute of repose, would create new causes of actions. As the Supreme Court has noted, "extending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950 (1997) (citing *Chenault v. United States Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994) (relying on *Landgraf* in holding "that a newly enacted statute that lengthens the applicable statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred under the old statutory scheme because to do so would alter the substantive rights of a party and increase a party's liability")); *see also Enterprise Mortg.*, 391 F.3d at 407 ("Where a plaintiff is empowered by a new statute to bring a cause of action that previously had no basis in law, a new cause of action has, in some sense of the word, been created.").

The salience of Section 804(c) is further magnified by the fact that Lieberman's and L-3's claims had been extinguished by a statute of *repose*, not merely by a statute of limitations. *See P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (noting that "statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time"). The *P. Stolz* decision distinguished a statute of repose from a statute of limitations in the following manner:

> In general, a statute of repose acts to define temporally the right to initiate suit against a defendant after a

-17-

legislatively determined time period. Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit. "[S]tatutes of limitations bear on the availability of remedies and, as such, are subject to equitable defenses . . ., the various forms of tolling, and the potential application of the discovery rule. In contrast, statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time. In theory, at least, the legislative bar to subsequent action is absolute, subject to legislatively created exceptions . . . set forth in the statute of repose.

*Id.* at 102 (quoting Calvin W. Corman, Limitation of Actions, § 1.1, at 4-5 (1991)).

If, as the Supreme Court has suggested, extending a statute of limitations after the pre-existing period of limitations has expired would essentially create a new cause of action, *see Hughes Aircraft,* 520 U.S. at 950, then *a fortiori* applying Sarbanes-Oxley to claims extinguished by a period of *repose* would unequivocally create a new cause of action. *Compare Chenault*, 37 F.3d at 538-39 (declining to apply new statute retroactively to revive a claim that would otherwise be stale under old statute of limitations). Congress undoubtedly possesses the powers to resurrect claims extinguished by a statute of repose, no less than claims barred by a statute of limitations, but it must manifest those powers in the clearest possible terms. Section 804(b), particularly when considered with Section 804(c), does not possess the requisite degree of

clarity and unambiguity to accomplish this purpose.[11] Therefore, reading the statute as a whole, it is clear to us that the language of Section 804 does not unambiguously revive previously expired securities fraud claims.

It also bears mention that the legislative history of Section 804 does not clearly evince the congressional intent that Section 804 apply retroactively to revive expired securities fraud claims. We find the Second Circuit's analysis persuasive on this score:

> Section 804's precursor, Section 4 of the proposed Corporate and Criminal Fraud Accountability Act of 2002, S. No.2010, was introduced by Senator Patrick Leahy in March 2002. Nothing in the Senate Committee Report for the proposed Act indicates that the extension of the statute of limitations was intended to revive expired claims or that Congress was even considering such a thing. *See* S.Rep. No. 107-146 (2002). Nor do the statements Senator Leahy made during the Conference Committee meeting on Sarbanes-Oxley, reflect any

---

[11] Lieberman and L-3 argue, however, that "[s]ection 804(c) merely serves as Congress' response to a concern that the extended statute of limitations may have been perceived as creating additional private substantive rights of action, that did not previously exist under the federal securities laws." App. (L-3) Br. at 33. But those "cases where [the] Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328 n. 4 (1997). That does not describe the situation presented here, particularly in light of *Hughes Aircraft Co., supra,* and *Chenault, supra.*

intention to revive expired claims. *See* Conference Report on Corporate Responsibility Legislation, 107th Cong., July 24, 2002, reprinted in Federal News Service (2002).

*Enterp. Mortg.*, 391 F.3d at 408. In arguing to the contrary, Lieberman and L-3 ignore the fact that congressional intent to apply the statute retroactively is different from congressional intent to revive expired claims.

We therefore conclude that there is no clear evidence that Congress intended Section 804 to revive previously expired claims.[12]

---

[12] We pause to note that application of the distinction between mere retroactivity and the revival of expired claims limits the relevance of the retroactivity cases relied upon by Lieberman and L-3. In *Martin v. Hadix*, 527 U.S. 343 (1999), for example, the Supreme Court considered the temporal reach of a provision of the Prison Litigation Reform Act of 1995. In concluding that Congress had not expressly mandated the temporal reach of the applicable statute, the Court noted that the statute did not contain the following language that it suggested in *Landgraf* might qualify as a clear statement of congressional intent to apply a statute retroactively: "[T]he new provisions shall apply to all proceedings pending on or commenced after the date of enactment.'" *Id.* at 354 (quoting *Landgraf, supra*, at 260).

Lieberman and L-3 compare the language of Section 804 to the language quoted by the *Martin* court as unambiguously prescribing the temporal reach of the statute. However, *Martin* (or *Landgraf*) never addressed the question, presented here, of whether a statute should be given retroactive effect *to revive expired claims*.

The same holds true with respect to *United States v. One*

*"Piper" Aztec "F" De Luxe Model 250 PA 23 Aircraft Bearing Serial No. 27-7654057* (*Piper Aztec*), 321 F.3d 355 (3d Cir. 2003), where this Court interpreted the Civil Asset Forfeiture Reform Act ("CAFRA"). Under CAFRA, in "any forfeiture proceeding commenced on or after [August 23, 2000]," the government must provide forfeiture under a different burden of proof – preponderance of the evidence. *Id.* at 357. The Court found that the language in the statute was clear and unambiguous, rejecting the argument for retroactive application to cases filed before but pending on the effective date. *Id.* at 357-58.

Focusing on this Court's conclusion that CAFRA's language clearly prescribed the temporal reach of the statute, Lieberman and L-3 argue that, in Section 804, which contains substantially identical language, Congress has also clearly prescribed the relevant temporal scope. *Piper Aztec*, however, did not consider the revival of stale claims.

Lieberman and L-3 also rely on two cases which arguably have interpreted similar statutory language to include previously expired claims. *See International Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 970 v. Robbins & Myers, Inc.*, 429 U.S. 229, 242-43 (1976) (holding amendment to limitations period for filing EEOC complaints applied to previously expired but currently pending claim) and *Alabama Dry Dock and Shipbuilding Corp. v. Sowell*, 933 F.2d 1561, 1563-65 (11th Cir. 1991) (interpreting statute's instruction that it "shall apply both with respect to claims filed after such date and to claims pending on such date" to include previously expired claims); *overruled on other grounds*, *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 506 U.S. 153 (1993). As the Appellees point out, these cases did not deal with claims extinguished by statutes of repose, as opposed to statutes of limitations. Nor did either of these cases deal with a provision similar to Section 804(c). In any event,

## 2. *Retroactive Effect*

Having concluded that there is no clear evidence that Congress intended for Section 804 to apply retroactively to revive stale claims, it is necessary to ask whether retroactive application of Section 804 to such claims would have "retroactive effect," *i.e.*, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. Our conclusion that Section 804 may not be read to authorize the revival of moribund claims inexorably leads to a further conclusion that such a reading would have an impermissible retroactive effect. Nevertheless, because the parties have briefed and argued "retroactive effect," we address this issue.

Lieberman and L-3 essentially argue that application of Section 804 to their claims does not implicate the concerns specified by the Supreme Court in *Landgraf*, as Section 804 affects only the procedural posture of their action, not substantive rules. However, it is evident that the resurrection of previously time-barred claims "increase[s] a party's liability" by abolishing a complete defense to suit. *See Enterprise Mortg.*, 391 F.3d at 409-10 (holding that "the resurrection of previously time-barred claims has an impermissible retroactive effect" under *Landgraf* ); *see also Chenault*, 37 F.3d at 539 ("In this case the rights of the defendant would be altered and its liability increased because it would be forced to defend an action that was previously time-barred.").

---

they both predate *Hughes Aircraft*. We thus find them inapposite.

Moreover, as previously stated, we are dealing with claims extinguished by a statute of repose. Lieberman's and L-3's claims would therefore affect substantive rights by creating new causes of action. We can envision no greater retroactive effect than this.[13]

We conclude that extending the amended statute of limitations to revive expired securities fraud claims would have an impermissible retroactive effect. In accordance with *Landgraf* then, we decline to apply Section 804 to revive Lieberman's and L-3's expired claims.

## IV.

As noted, we are not the first circuit court to consider whether Sarbanes-Oxley revives previously expired securities fraud claims. Three of our sister courts of appeals have already done so, and in each case, they have declined to apply Section 804 to such claims – as we do here. *See Enterprise Mortg.*, 391 F.3d at 409-10; *Foss*, 394 F.3d at 542; *In re: ADC Telecomm., Inc. Sec. Litig.*, 409 F.3d at 978.[14]

---

[13] In a somewhat similar vein, Lieberman and L-3 contend that Section 804 does not impose new duties with respect to past conduct, as the conduct in question was unlawful both before and after the enactment of Sarbanes-Oxley. The same argument was rejected by the Supreme Court in *Hughes Aircraft*. *See* 520 U.S. at 947.

[14] We are aware of the recent decision from the Eleventh Circuit in *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005). In that case, the district court determined that Section 804 of Sarbanes-Oxley revived time-barred claims. The Eleventh Circuit, however, remanded for further fact-finding,

Accordingly, we will affirm the District Courts'
respective decisions dismissing the actions.

---

thus declining to reach the question whether Section 804 can be
applied retroactively to revive securities fraud claims. *See id.* at
1294 n.19.