United States Court of Appeals
Fifth Circuit

**F I L E D**

September 11, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-10928
_____

MICHAEL MARGOLIES; ELAINE MARGOLIES, as Trustee on Behalf of the
Margolies Family Trust,

Plaintiffs-Counter Defendants-Appellants,

versus

DARWIN DEASON; DOUGLAS R. DEASON; DAVID L. NEELY

Defendants-Counter Claimants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Michael Margolies and the Margolies Family Trust (collectively "Margolies") appeal the

district court's dismissal of all claims as time-barred, arguing that an extension to the statute of repose

in the Sarbanes-Oxley Act of 2002 ("SOA") applies to the federal claims and that the district court

erred in finding that Margolies was on inquiry notice of the alleged fraud in 1998. We affirm in part

and reverse in part, and remand the case to the district court.

**I. FACTS AND PROCEEDINGS**

Michael Margolies and the Margolies Family Trust were the largest shareholders of a

- 1 -

company known as U.S. Transportation Systems ("USTS"). On March 19, 1998, Precept Business Services, Inc. ("Precept") acquired USTS. In exchange for Margolies's ownership interest in USTS, he received Precept common stock. Subsequently, Precept filed for bankruptcy, and the Precept stock owned by Margolies became worthless. In November 2002, the trustee appointed for Precept filed a complaint in the adversary bankruptcy proceeding. In this complaint, the trustee claimed that the defendants, Darwin Deason, Douglas R. Deason, and David L. Neely (collectively "Deason"), engaged in behavior amounting to self-dealing and fraud which resulted in the collapse of the company. On March 17, 2003, Margolies filed a complaint against Deason alleging eight causes of action relating to this self-dealing and fraud. Margolies subsequently amended the complaint. The first amended complaint contained five causes of action: (1) violation of the Securities Act of 1933, (2) violation of the Securities Exchange Act of 1934, (3) violation of Texas Blue Sky Article 581-33(A)(2), (4) violation of Texas Blue Sky Article 581-33(F), and (5) common law fraud.

Deason filed a motion for summary judgment seeking dismissal of all of Margolies's claims as time-barred. Deason claimed that in 1998 Margolies became either actually or constructively aware of the facts giving rise to the causes of action in the complaint. Conversely, Margolies claimed that he did not and could not reasonably have learned the relevant information until the trustee filed a complaint in the bankruptcy proceeding in November 2002. The district court granted Deason's motion for summary judgment and entered a final judgment dismissing all of Margolies's claims as time-barred.[1]

---

[1]Deason had also filed counterclaims based on a Texas statute permitting certain time-barred claims arising out of the same transaction or occurrence as the original claims. TEX. CIV. PRAC. & REM. CODE § 16.069. These claims were also dismissed in the district court. On appeal, Deason

## II. STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed de novo. *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001). The district court's grant of "[s]ummary judgment is appropriate if the record shows 'that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)). In the summary judgment context, the court "views the evidence in the light most favorable to the non-movant." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). If a reasonable jury could return a verdict for the non-movant, a genuine issue of material fact exists and summary judgment is not proper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

A.    Federal Securities Law Claims

The parties dispute which particular statutes set the applicable periods of time in which to bring the first and second causes of action in the first amended complaint. In the first cause of action, Margolies alleges that Deason violated §§ 11 & 12 of the Securities Act of 1933, codified at 15 U.S.C. §§ 77k & 77l. Deason argues that the appropriate time limits for this action are found at 15 U.S.C. § 77m, which imposes a term of three years after the sale of the security or its being offered to the public.

In the second cause of action, Margolies alleges that Deason violated both § 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), and Rule 10(b)-5, codified at 17

---

does not dispute the propriety of dismissing these claims, and therefore we do not consider them. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

C.F.R. § 240.10b-5.  In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991), the Supreme Court held that these claims were barred after the same time period, namely three years after the sale or offering.  Under this period, which Deason urges, the first and second causes of action are clearly time-barred because suit was not filed within three years of the sale or offering.

Margolies argues that instead the time limit for the first and second causes of action is controlled by Section 804 of the SOA.  Enacted on July 30, 2002, the SOA changed the time period to bring any "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934."  28 U.S.C. § 1658(b).  The district court correctly found that the claims in the first and second causes of action involved fraud such that they were the type of claims that fall within the confines of this statute.

Under the new statute, such violations "may be brought not later than the earlier of --(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  *Id.*  The SOA contains two other important provisions.  First, one provision states that the new time period "shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act."  Pub. L. No. 107-204, 116 Stat. 745, 801 (2002).  Second, another provision states that "[n]othing in this section shall create a new, private right of action."  *Id.*

At this point it is worth noting the difference between statutes of limitations and statutes of repose.  Statutes of limitations speak to matters of remedy, whereas statutes of repose eliminate the underlying rights when they lapse.  *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (statutes of limitations); *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 490 (3d Cir. 2006)

(statutes of repose); *Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.*, 419 F.3d 355, 362–63 (5th Cir. 2005) ("[T]he differences between statutes of limitations and statutes of repose are substantive, not merely semantic.").

The statute at issue here is a statute of repose. *See Lampf*, 501 U.S. at 360 (noting that the pre-SOA three-year time period under the Securities Exchange Act of 1934 is a statute of repose); *Bear Lake & River Waterworks & Irrigation Co. v. Garland*, 164 U.S. 1, 14 (1896) (stating that when a statute creates a right unknown at common law, the general rule is that a corresponding statutory time bar is one of repose rather than limitation). As such, the right to relief itself is extinguished when the relevant time period expires.

The SOA was enacted well after the first and second causes of action accrued and subsequently expired under the old time limits. Under the pre-SOA period of three years, these causes of action were extinguished in early 2001, more than a year prior to the enactment of the SOA. Margolies would have us hold that these causes of action that were indisputably time-barred for a period of more than a year prior to the enactment of the SOA are no longer time-barred post-SOA.

The Second, Third, Fourth, Seventh, and Eighth Circuits, in cases addressing this issue, have held that the SOA did not revive previously extinguished causes of action. *See In re Enter. Mortgage Acceptance Co. Sec. Litig.* ("*Enterprise*"), 391 F.3d 401, 411 (2d Cir. 2005); *Lieberman*, 432 F.3d at 492; *Glaser v. Enzo Biochem, Inc.*, 126 F. App'x 593, 598 (4th Cir. 2005); *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005); *In re ADC Telecomms., Inc. Sec. Litig.*, 409 F.3d 974, 978 (8th Cir. 2005). The Second Circuit's opinion in *Enterprise* contains a well-written retroactivity analysis that the other circuit courts have largely followed. 391 F.3d at 405–10; *see, e.g., Foss,* 394 F.3d at 542 ("We find [*Enterprise*] persuasive and have nothing to add to the second circuit's

explanation."). In an interlocutory appeal, the Eleventh Circuit disagreed with the other circuits and remanded for further fact-finding. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1281–82 (11th Cir. 2005) (noting that statutes that are textually clear as to retroactivity should be retroactively applied). We conclude that the district court correctly followed the majority of the circuits in holding that the SOA did not apply retroactively to revive the first and second causes of action.

The Supreme Court has stated repeatedly "that there is a presumption against retroactive legislation that is deeply rooted in our jurisprudence." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (internal alteration and quotation omitted). In *Landgraf v. USI Film Products*, the Supreme Court established a two-part test for retroactivity inquiries. 511 U.S. 244, 280 (1994); *see Rutland v. Moore*, 54 F.3d 226, 229–30 (5th Cir. 1995) (refusing to apply a portion of the Civil Rights Act of 1991 retroactively). Under *Landgraf*, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280. If Congress has not done so, the second step is:

> [T]he court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.*

With respect to the first step, the Court has indicated that an express prescription is synonymous with an "unambiguous directive." *Lindh v. Murphy*, 521 U.S. 320, 325 (1997) (internal quotations omitted). In addition, the Court has held that "the existence of 'plausible' alternative interpretations of statutory language meant that that language could not qualify as an 'unambiguous'

expression" and therefore could not meet the first part of the two-part *Landgraf* test. *Id.* at 329 n.4 (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34–37 (1992)).

We hold that there is a plausible alternative explanation for the language in the SOA. The statute contains both a statement that it applies to "all proceedings addressed by this section that are commenced on or after the date of enactment of this Act" and a statement that "[n]othing in this section shall create a new, private right of action." These two statements combined could reasonably mean that the statute applies to claims (1) not time-barred when the SOA was enacted, (2) filed at a time after the SOA's enactment at which they would have been time-barred under the old scheme, and (3) filed at a time when under the new scheme they are not time-barred. As an example, this category of cases might include an action filed six months after the enactment of the SOA involving conduct just over three years old at the time. In such a case, the old time limit expired after the SOA was enacted but prior to the filing of the action. It is certainly not clear that Congress intended this particular result in crafting the statute, but the fact that the result is ambiguous is itself the very reason the statute fails the first step of the *Landgraf* test. 511 U.S. at 280.

Further obscuring the intended result of the language is the Supreme Court's decision in *Hughes Aircraft*. There, the Court examined the retroactivity of a statute that eliminated a requirement in *qui tam* actions. Previously, *qui tam* suits could not be brought based on information that the government already possessed. *Id.* at 945. A 1986 amendment "permit[ted] *qui tam* suits based on information in the government's possession, except" in certain limited circumstances. *Id.* at 946. The Court's language in *Hughes Aircraft* is applicable here. The Court noted that the amendment "revive[d] that action" and cited approvingly to a Ninth Circuit case applying *Landgraf* to a time bar question not unlike the one here. *Id.* at 950 (stating that "extending a statute of

- 7 -

limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action") (citing *Chenault v. U.S. Postal Service*, 37 F.3d 535, 537, 539 (9th Cir. 1994)). Under *Hughes Aircraft*, the SOA's language that "[n]othing in this section shall create a new, private right of action" creates an ambiguity in the statute's meaning.

Having held that the language of the statute does not unambiguously necessitate retroactivity, it is necessary to turn to the statute's legislative history. As the Second Circuit concluded in *Enterprise*, "the legislative history of Section 804 does not clearly indicate that Congress intended that Section 804 apply retroactively to revive expired securities fraud claims." 391 F.3d at 408. We agree with the Second Circuit and discern nothing in the legislative history to indicate congressional intent that the statute be applied retroactively to previously expired claims.

In the second step of the *Landgraf* analysis, we consider whether the statute would have a retroactive effect. The Supreme Court has made clear that *Landgraf* "does not purport to define the outer limit of impermissible retroactivity." *Hughes Aircraft*, 530 U.S. at 947. It is clear that this statute's effect would be retroactive. The fact that the statute would permit a cause of action on July 31, 2002, that was definitively time-barred on July 29, 2002, indicates a retroactive effect if applied as such. *See id.* at 950. The presumption against retroactive legislation therefore indicates that the previous three-year period applies.[2] Accordingly, the district court properly dismissed the first and

_____

[2]The Eleventh Circuit in *Tello* held that the *Landgraf* "presumption and analysis, however, [were] unwarranted when Congress state[d] its unambiguous intention that the statute appl[ied] retroactively to pre-enactment conduct." 410 F.3d at 1281–82. Essentially, the Eleventh Circuit held that "the temporal effect [was] obvious from the statutory language" itself. *Id.* at 1281. We disagree with the court's determination that there is no ambiguity regarding retroactivity in the statutory

- 8 -

second causes of action as time-barred.

B.      Texas Blue Sky Law Claims

The relevant statute that applies to the third and fourth causes of action under Articles 581-33(A)(2) and 581-33(F) of the Texas Blue Sky Laws states that a cause of action expires after the earlier of "(a) more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence; or (b) more than five years after the sale."  TEX. REV. CIV. STAT. ANN. art. 581, § 33(H)(2).

Margolies brought these causes of action within five years of the sale and therefore part (b) is satisfied.  As such, the remaining issue is whether the plaintiff "by the exercise of reasonable diligence," should have learned of facts placing him on notice of his claim.  *See id.*  This is commonly referred to as inquiry notice.  *See Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988).  Deason argues that various disclosures made by Precept, consisting primarily of statements contained in filings, placed Margolies on inquiry notice in 1998 of the facts upon which the complaint are based. Margolies counters that these disclosures were not sufficient for inquiry notice and that instead he was not aware of the underlying conduct giving rise to his claims until the trustee filed a complaint in the bankruptcy proceeding in November 2002.

This fact-intensive inquiry is typically appropriate for consideration by a jury.  "Ordinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury."  *Ruebeck v. Hunt*, 176 S.W.2d 738, 740 (Tex. 1944).  "Unless the evidence is such that reasonable minds may not differ as to its effect, the question as to whether a party has exercised diligence in discovering fraud is for the jury."  *Id.*; *see also In re Estate of Fawcett*, 55 S.W.3d 214, 221 (Tex. App. 2001)

---

language.

(reversing a grant of summary judgment on time bar grounds). In moving for summary judgment on the time bar issue, Deason "assumed the burden of conclusively establishing that [Margolies] knew or should have known, with the exercise of reasonable diligence, of the alleged fraud." *Fawcett*, 55 S.W.3d at 221; *see also Jensen,* 841 F.2d at 607 (noting that, in analogous federal actions, plaintiffs cannot ignore "storm warnings" that would "alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction") (internal quotation omitted).

Margolies's claims largely revolve around pieces of property sold by Precept to the defendants, sometimes at allegedly lower than market value and allegedly for no legitimate business purpose. Precept disclosed in its filings that it had entered into sales or sale-leasebacks of a ranch, a restaurant, and a luxury box at Lone Star Park to a company owned by the defendants. Precept also disclosed that it would record a loss on these sales, part of which was because of costs of repair. Precept also disclosed that it sold two condominiums (at least one to Darwin Deason). Precept disclosed that it sold a piece of real property to a company owned by the defendants while not addressing whether the sale was for below market value, as Margolies alleges. Precept also disclosed a sale of stock in another company to Darwin Deason but did not disclose various details about this transaction, including that it was allegedly a sham and was for below market value. The filings also disclosed information about the defendants' compensation but did not provide details that would suggest the improprieties alleged by Margolies's complaint.

In addition, the filings disclose that two acquisitions occurred shortly after the USTS-Precept deal closed. Margolies alleges that these acquisitions were the result of impermissible negotiations and the signing of letters of intent which took place before the Precept-USTS deal in a window of time during which Precept had agreed not to enter into any such agreements or arrangements. The

- 10 -

disclosure of the closing of the acquisitions did not, however, indicate when letters of intent were signed or when negotiations took place.        While these disclosures contain various levels of detail, they essentially do not include any explanation of the purpose or reason for the transactions. The underlying tension between the parties' positions is whether or not disclosure of these details about particular actions taken by the company without accompanying information to indicate the motivation or purpose for the actions is sufficient to place the plaintiff on inquiry notice. In essence, the district court found that these various disclosures amounted to a "storm warning." *See Jensen*, 841 F.2d at 607. We disagree.

It is worth mentioning again that, not only do we not consider the merits of Margolies's claims, we also do not decide whether he was on inquiry notice. The narrow inquiry before the court is whether the district court improperly concluded on summary judgment that a reasonable plaintiff should have known that these transactions sufficiently raised the specter of fraud as to place him on inquiry notice. *Ruebeck*, 176 S.W.2d at 740 (noting that summary judgment with respect to inquiry notice is only appropriate if "reasonable minds may not differ as to its effect").

We hold that, with respect to the disclosures in this particular case, the information provided is insufficient to conclude that reasonable minds could not disagree as to whether Margolies "has exercised diligence in discovering fraud." *Ruebeck*, 176 S.W.2d at 740. Accordingly, the district court's dismissal of the third and fourth causes of action was in error.

C.    Common Law Fraud Claim
Under present Texas law, "a person must bring suit [for common law fraud] not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a). This statute previously did not include fraud and was amended in 1999 to clarify the

Texas caselaw regarding the time limits for filing fraud actions. *See Williams v. Khalaf*, 802 S.W.2d 651, 656–57 (Tex. 1990) (detailing confusion regarding whether two or four year time limit applied). It is not necessary for this court to inquire further into this issue, however, as Margolies's fraud claim is only timely if the statute (whether two years or four years) was tolled. In the absence of tolling, the claim was time-barred either in 2000 or 2002, well before Margolies brought the action.

Tolling is appropriate when the case involves "allegations of fraud or fraudulent concealment." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). In such cases, the "action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* at 4.

As previously discussed, the district court erred in determining on summary judgment that Margolies was on inquiry notice in 1998 of the relevant facts. This is a question for the jury. The district court, therefore, erred in dismissing the fifth cause of action.

## IV. CONCLUSION

The district court judgment is AFFIRMED IN PART and REVERSED IN PART. The district court judgment with respect to the first and second causes of action is AFFIRMED. The district court judgment with respect to the third, fourth, and fifth causes of action is REVERSED. The case is REMANDED for further proceedings not inconsistent with this opinion.