*Weingarten v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term 2016

(Argued: May 15, 2017     Decided: July 27, 2017)

Docket No. 15-923

ISRAEL WEINGARTEN,

*Petitioner-Appellant,*

–v.–

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————

Before:
    PARKER, WESLEY, and DRONEY, *Circuit Judges*.

Appeal from a March 8, 2016 order of the United States District Court for the Eastern District of New York (Gleeson, *J.*)

denying the 28 U.S.C. § 2255 petition of appellant Israel Weingarten, who is currently serving a thirty-year term of imprisonment following convictions of two counts of transporting a minor in foreign commerce for the purpose of engaging in criminal sexual activity and two counts of traveling in foreign commerce for the purpose of engaging in sexual conduct with a minor in violation of 18 U.S.C. § 2423. On appeal, Weingarten argues principally that his trial counsel was constitutionally ineffective for conceding a statute of limitations defense. In this opinion, we **AFFIRM** the portion of the District Court's order pertaining to that argument; in a summary order filed contemporaneously, we **AFFIRM** the balance of the order.

————————

TODD W. BURNS, Burns & Cohan, San Diego, CA (Jodi D. Thorp, Clarke, Johnston, Thorp & Rice, San Diego, CA, *on the brief*), *for petitioner-appellant*.

JENNIFER M. SASSO, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), for Bridget M. Rhode, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for respondent-appellee*.

————————

WESLEY, *Circuit Judge*:

In 2008, petitioner-appellant Israel Weingarten was indicted on five counts of violating 18 U.S.C. § 2423 for sexually abusing his then-sixteen-year-old daughter on three international trips in 1997. Weingarten was convicted on all counts following a jury trial, and he was sentenced on four of

those counts after one was vacated on direct appeal. He now appeals from a March 8, 2016 order of the United States District Court for the Eastern District of New York (Gleeson, *J.*) denying relief under 28 U.S.C. § 2255. Weingarten's § 2255 petition argued, *inter alia*, that his trial counsel failed to provide constitutionally effective assistance when they conceded before trial that the charges were timely under the applicable statute of limitations, 18 U.S.C. § 3283 (2003). Weingarten contends his counsel should have argued that (1) the 2003 version of § 3283 does not apply retroactively to his 1997 offense conduct and, alternatively, (2) under the categorical approach, § 2423 charges are subject to the default five-year federal criminal limitations period, 18 U.S.C. § 3282, rather than the extended limitations period for child sexual abuse offenses, § 3283. Because counsel's decision to forgo these arguments was not objectively unreasonable, we AFFIRM the order of the District Court.[1]

## I.

The facts and procedural history surrounding Weingarten's case are discussed in detail in our opinions in his direct appeals, *United States v. Weingarten* ("*Weingarten I*"), 632 F.3d 60, 62–63 (2d Cir. 2011), and *United States v. Weingarten* ("*Weingarten II*"), 713 F.3d 704, 707–08 (2d Cir. 2013). We relate here only the events relevant to the narrow statute of limitations issue before us in this opinion.

---

[1] Weingarten also argues (1) his trial counsel provided ineffective assistance because they were unprepared, (2) his sentencing counsel provided ineffective assistance by failing to object to a sentencing consideration, and (3) the Government committed prosecutorial misconduct. We AFFIRM the District Court's rejection of these arguments in a summary order issued simultaneously with this opinion.

**A.**

Weingarten and his now-ex-wife have eight children. Jane Doe, the victim in this case and their eldest daughter, was born in 1981.

The Weingartens lived in Antwerp, Belgium for much of Doe's early life. When Doe was nine or ten years old, Weingarten began to abuse her sexually. Doe started resisting her father's advances when she was thirteen or fourteen years old and eventually complained to her school principal about the abuse.

In April 1997, Weingarten moved his family to Bet Shemesh, Israel as a result of his daughter's compliant. Weingarten continued to abuse Doe in Israel.

In late July 1997, Weingarten took Doe, who was sixteen at the time, on a trip from their home in Israel to visit his ailing father in Brooklyn, New York. Weingarten and Doe stayed in Brooklyn for roughly one month. Weingarten sexually abused Doe during that time.

In August 1997, Weingarten transported Doe from Brooklyn to the old family home in Antwerp, where they remained for approximately a month. While in Belgium, Weingarten sexually abused Doe "night and day, every day." *Weingarten I*, 632 F.3d at 63 (quoting Trial Tr. 290:14).

Doe returned to Israel in September of 1997 and told her mother of her father's abuse shortly after returning home. Doe's mother helped Doe move to a boarding school in England for the remainder of her secondary education, but no one reported Weingarten's conduct to relevant law enforcement authorities.

Doe eventually immigrated to the United States. Her entire family, including her father, a United States citizen,

4

followed soon thereafter and settled in New York. Weingarten and his wife divorced three years later. Despite allegations from his wife in post-divorce custody proceedings that he sexually abused Doe, Weingarten was awarded sole custody of his minor children in 2004.

**B.**

Weingarten's 1997 abuse of Doe eventually came to the attention of federal authorities. On August 18, 2008, a federal grand jury in the Eastern District of New York indicted Weingarten for his 1997 trips with Doe on two counts of transporting a minor in foreign commerce for the purpose of engaging in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and three counts of traveling in foreign commerce for the purpose of engaging in sexual conduct with a minor in violation of 18 U.S.C. § 2423(b).

On November 26, 2008, Weingarten moved to dismiss the indictment on two grounds relevant to this appeal. First, Weingarten argued that Count Three of the indictment, which involved Weingarten's April 1997 trip from Belgium to Israel, should be dismissed because it lacked a territorial nexus with the United States. Second, Weingarten argued the entire indictment should be dismissed because the eleven-year delay between his offense conduct and the indictment violated the Due Process Clause of the Fifth Amendment to the United States Constitution. In arguing pre-indictment delay, Weingarten explicitly conceded that his indictment was timely because it was subject to the 2003 version of 18 U.S.C. § 3283, which permitted the prosecution of "offense[s] involving the sexual . . . abuse . . . of a child under the age of 18 years . . . during the life of the child." PROTECT Act, Pub. L. No. 108–21, § 202, 117 Stat.

650, 660 (2003).[2] He insisted nevertheless that the indictment was unconstitutional because he was "substantially prejudiced" by the delay. J.A. 763.

The District Court denied Weingarten's motion in early 2009. Weingarten was tried before a jury and convicted on all five counts.

Weingarten appealed his convictions to this Court. *Weingarten I*, 632 F.3d 60. He argued, *inter alia*, that the District Court erred in denying his motion to dismiss Count Three for want of a territorial nexus with the United States. *See id.* at 63. He did not raise a statute of limitations argument. We agreed that § 2423(b) requires a territorial nexus with the United States and that Weingarten's Antwerp-to-Israel trip did not satisfy that requirement. As a result, we vacated Weingarten's conviction on Count Three, affirmed Weingarten's remaining counts of conviction, and remanded for resentencing. *See id.* at 64–71; *United States v. Weingarten*, 409 F. App'x 433 (2d Cir. 2011).

On remand, the District Court sentenced Weingarten to thirty years' imprisonment, which we affirmed and which he is currently serving. *Weingarten II*, 713 F.3d at 708–16.

---

[2] Although Weingarten stated in his motion to dismiss that he believed the 2003 version of § 3283 applied to his case, he quoted language from the 2006 version of § 3283, which provides a limitations period in child sexual abuse cases that runs for the life of the child "or . . . ten years after the offense, whichever is longer." Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109–162, § 1182(c), 119 Stat. 2960, 3127. Throughout the present § 2255 litigation, the parties have treated Weingarten's motion as conceding that the 2003 version applied notwithstanding the 2006 quotation. We adopt the same interpretation.

## C.

Weingarten timely petitioned the District Court for relief under 28 U.S.C. § 2255, represented for the first time by present counsel. Weingarten argued, *inter alia*, that he was denied effective assistance of counsel because trial counsel conceded the indictment was timely under 18 U.S.C. § 3283 (2003). The District Court denied Weingarten's petition, stating:

> I think the [G]overnment is correct that the proper statute of limitations was [§] 3283. I agree that transporting a minor with the intent to engage in criminal sexual activity involved sexual abuse of a minor. I also agree that the post-2003 version of the statute applies to this case.

Special App. 29. We issued Weingarten a certificate of appealability to contest that decision.

## II.

As noted, Weingarten argues he was denied his Sixth Amendment right to counsel because his trial counsel conceded the indictment was timely. He offers two arguments that he believes counsel should have made instead of conceding timeliness. First, Weingarten asserts counsel should have argued the shorter limitations period in the 1994 version of § 3283 applied to his 1997 offense conduct because Congress did not intend the longer period in the 2003 version of § 3283 to apply retroactively. Second, Weingarten asserts counsel should have argued the standard five-year limitations period for federal crimes provided in 18 U.S.C. § 3282 applied to his conduct because, under the categorical approach, § 3283 does not apply

to 18 U.S.C. § 2423 offenses. Neither argument warrants relief under § 2255.[3]

**A.**

There is "a strong presumption that counsel's conduct fell within the wide range of professional assistance." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (brackets omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). To overcome that presumption, a petitioner must establish two elements. First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Second, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**B.**

Weingarten's trial counsel submitted a sworn affidavit in the § 2255 proceeding in which they justified the decision to forgo a statute of limitations defense as "a technique of writing and of . . . strategy." App. 447. Weingarten's counsel considered the statute of limitations defense "tenuous" and believed it would "clutter" the motion to dismiss and distract from the motion's other "strong point[s]." App. 448. That decision was reasonable under the circumstances of this case.

The Supreme Court long ago made clear that the Sixth Amendment does not require counsel to raise every non-

---

[3] Our review is *de novo*. *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).

frivolous argument a client requests. *See Jones v. Barnes*, 463 U.S. 745, 753–54 (1983).[4] It is the very function of an effective legal counselor to select among the available arguments and raise only "the most promising issues for review." *Jones*, 463 U.S. at 752. Such a tactic avoids cluttering the court with unnecessary arguments that would "dilute the force of the stronger ones." *Id.* Courts on collateral review may not "second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim suggested by a client." *Id.* at 754.

Nevertheless, failure to raise an argument may, in some instances, constitute deficient performance. *E.g., Lynch*, 789 F.3d at 312–16; *Mayo*, 13 F.3d at 534–36. "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted *significant and obvious* issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533 (emphasis added). "[R]elief may be warranted when a decision by counsel [to forgo an argument] cannot be justified as a result of some kind of plausible [litigation] strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

"In assessing [an] attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case . . . and may not use hindsight to second-guess his strategy choices." *Mayo*, 13 F.3d at 533 (citation omitted). A

---

[4] Although *Jones* addressed whether appellate counsel's decision to forgo arguments constituted ineffective assistance, it informs our analysis of trial counsel's conduct in this case. *See Thomas v. United States*, 737 F.3d 1202, 1208–09 (8th Cir. 2013) (applying *Jones* in a § 2255 challenge to "trial counsel's decision not to move to dismiss the indictment"); *cf. Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel.").

reviewing court must therefore evaluate an attorney's performance in light of the state of the law at the time of the attorney's conduct. *See Strickland*, 466 U.S. at 690. "Counsel is not required to forecast changes in the governing law." *Mayo*, 13 F.3d at 533.

Our analysis begins and ends with whether the statute of limitations arguments Weingarten, with the benefit of hindsight, now asserts that his counsel should have raised were "significant and obvious." *See Mayo*, 13 F.3d at 533. Both arguments were clearly significant; either would have furnished Weingarten a complete defense to the entire indictment. However, neither argument was so obvious that it was unreasonable for Weingarten's counsel to forgo it. We therefore conclude trial counsel did not provide objectively unreasonable representation without relying on whether trial counsel's Due Process Clause and extraterritoriality arguments were "clearly and significantly weaker." *See id.*[5]

**1.**

Weingarten contends that the 1994 version of § 3283, rather than the 2003 version, clearly applied to his 1997 offense conduct.

In 1994, when Doe was thirteen years old, Congress amended § 3283 to provide: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution *before the child reaches the age of 25*

---

[5] The extraterritoriality argument, which proved meritorious on Weingarten's first appeal, was not weak. *See Weingarten I*, 632 F.3d at 64–71. But it produced a weaker result (dismissal of a single count of the indictment) than a successful statute of limitations defense would have (dismissal of the entire indictment).

*years*." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103–322, § 330018(a), 108 Stat. 1796, 2148 (emphasis added). This extended the federal criminal limitations period for child sex abuse offenses, making it easier to prosecute offenders who commit sex crimes that may be difficult to detect quickly. *See, e.g.*, David McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions*, 77 J. CRIM. L & CRIMINOLOGY 1, 60–61 (1986) ("[I]t is not unusual for children to delay in reporting sexual abuse . . . ."); Basyle J. Tchividjian, *Predators and Propensity*, 39 AM. J. CRIM. L. 327, 370 (2012) ("[C]hildren often delay or even fail to report sexual abuse . . . .").

After nearly a decade, Congress began to view even the extended limitations period in the 1994 version of § 3283 as "inadequate in many cases" because it released from criminal liability sex abusers whose crimes were not brought to the attention of federal authorities until after their victims turned twenty-five. H.R. Conf. Rep. No. 108–66, at 54 (2003). Thus, in 2003, when Doe was twenty-two years old, Congress amended § 3283 to provide: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution *during the life of the child*." PROTECT Act, § 202, 117 Stat. at 660 (emphasis added).

Weingarten clearly fell within the class of perpetrators that were of great concern to Congress in 2003. Weingarten sexually abused Doe in 1997, when she was sixteen. Although Doe reported the abuse to her mother in September 1997 and her mother in turn made similar accusations in post-divorce custody proceedings in 2003, federal prosecutors did not indict Weingarten until 2008, when Doe was twenty-seven.

That presented a statute of limitations issue. Weingarten's prosecution would be time-barred under the 1994 version of § 3283, which was in effect at the time of Doe's abuse, but timely under the 2003 version of § 3283, if it applied retroactively to Weingarten's conduct in 1997. The relevant questions on this § 2255 appeal thus become: Did the 2003 version of § 3283 apply retroactively to Weingarten's conduct? And if it did not, should that have been "obvious" to Weingarten's trial counsel at the time of the motion to dismiss? *See Mayo*, 13 F.3d at 533. The first question is difficult; its complexity forecasts the answer to the second.

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court established a two-part test to determine whether a statute applies retroactively. First, if Congress "expressly prescribed" that a statute applies retroactively to antecedent conduct, "the inquiry ends[] and the court enforces the statute as it is written," save for constitutional concerns. *In re Enter. Mortg. Acceptance Co. Sec. Litig.* ("*Enterprise*"), 391 F.3d 401, 405–06 (2d Cir. 2004) (quoting *Landgraf*, 511 U.S. at 280); *see also Stogner v. California*, 539 U.S. 607, 610 (2003) ("The Constitution's two *Ex Post Facto* Clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects."). Second, when a statute "is ambiguous or contains no express command" regarding retroactivity, a reviewing court must determine whether applying the statute to antecedent conduct would create presumptively impermissible retroactive effects. *Enterprise*, 391 F.3d at 406; *see Landgraf*, 511 U.S. at 263–79. If it would, then the court shall not apply the statute retroactively " 'absent clear congressional intent' to the contrary." *Enterprise*, 391 F.3d at 406 (quoting *Landgraf*, 511 U.S. at 280). If it would not, then the court shall apply the statute to antecedent conduct. *See Landgraf*, 511 U.S. at 273 ("Even absent specific legislative

authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations.").[6]

At the time of his motion to dismiss the indictment, Weingarten may have been able to make a colorable argument at the first step of the *Landgraf* analysis. He could have advanced the arguments he makes here to try to persuade the District Court that the 2003 version of § 3283 does not contain an unambiguous statement from Congress that the provision applies retroactively. Pursuing these arguments would have involved responding to the Government's argument that the language at the beginning of the 2003 version § 3283 ("No statute of limitations that would otherwise preclude prosecution . . . .") is a clear statement as to the statute's retroactive effect.

Weingarten contends that there is a more natural interpretation of that phrase that does not address retroactivity—that Congress intended the language in the 2003

_____

[6] *Landgraf* analysis applies to both civil and criminal statutes. *See Johnson v. United States*, 529 U.S. 694, 701 (2000) (citing *Landgraf*, 511 U.S. at 265); *Al Bahlul v. United States*, 767 F.3d 1, 12 (D.C. Cir. 2014) (en banc) (applying *Landgraf* to statute governing jurisdiction to adjudicate criminal offenses); *United States v. Holcomb*, 657 F.3d 445, 446 (7th Cir. 2011) (Easterbrook, J., concurring in denial of rehearing en banc) (stating that *Landgraf* controls when deciding whether a criminal penalty applies retroactively); *United States v. Jackson*, 480 F.3d 1014, 1018 (9th Cir. 2007) ("Although *Landgraf* . . . involved the possible retrospective application of [a] civil statute[], the same approach to statutory interpretation applies initially to determining the temporal reach of a criminal statute."); *United States v. Martin*, 363 F.3d 25, 46 (1st Cir. 2004) (applying *Landgraf* to decide whether a criminal sentencing statute applies retroactively); *United States v. Luna-Reynoso*, 258 F.3d 111, 115–16 (2d Cir. 2001) (applying *Landgraf* to decide whether a statute criminalizes antecedent conduct).

version of § 3283 to clarify that the statute prescribes a statute of limitations for applicable offenses that is different from the default five-year limitations period under federal law. *See* 18 U.S.C. § 3282. He also argues that, when Congress has in the past intended a criminal statute of limitations to apply retroactively, it has made that intent much clearer than the language on which the Government relies here. In support of this argument, Weingarten cites the 2001 amendment to 18 U.S.C. § 3286(b) extending the statute of limitations for certain terrorism offenses, USA PATRIOT ACT of 2001, Pub. L. No. 107–56, § 809(b), 115 Stat. 272, 381, which included the following application note: "The amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section." *Id.*; *see also* Crime Control Act of 1990, 101 Pub L. No. 647, § 2505(b), 104 Stat. 4789, 4861 ("The amendments . . . shall apply to any offense committed before the date of the enactment of this section, if the statute of limitations applicable to that offense had not run as of such date." (amending 18 U.S.C. § 3293)). By comparison, Weingarten argues, the 2003 amendment to § 3283 does not contain any clear statement as to retroactivity. *See* PROTECT Act, § 202, 117 Stat. at 660.

As reflected by this summary, Weingarten's trial counsel could have raised non-frivolous arguments at the first step of the *Landgraf* analysis. *But see United States v. Jeffries*, 405 F.3d 682, 684–85 (8th Cir. 2005). Had Weingarten prevailed in those arguments, the District Court may have found it necessary to proceed to the second step of *Landgraf*—deciding whether applying the 2003 version of § 3283 to Weingarten's 1997 conduct would create presumptively impermissible retroactive effects. That would not have been an easy task.

The law on how to determine if a retroactive statutory effect is presumptively impermissible is murky. Courts generally disfavor statutory effects that "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. The Supreme Court has also stated that a statute has presumptively impermissible retroactive effects when it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 290 (quoting *Soc'y for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.N.H. 1814) (No. 13,156) (Story, J.)). *But see Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 947 (1997) (observing Justice Story's definition "constitute[s] a *sufficient*, rather than a *necessary*, condition for invoking the presumption against retroactivity"). But in the end, the Supreme Court has acknowledged that "deciding when a statute operates 'retroactively' is not always a simple or mechanical task," *Landgraf*, 511 U.S. at 268, and courts must rely on judges' "sound . . . instincts," as well as the principles of affording parties fair notice, protecting reasonable reliance, and guarding settled expectations, to guide their analyses, *id.* at 270 (brackets omitted) (quoting *Danforth v. Groton Water Co.*, 178 Mass. 472, 476 (1901) (Holmes, J.)).

It has proved particularly difficult to categorize the presumptively impermissible effects of retroactively applying a statute of limitations. In *Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886 (2d Cir. 1995), we retroactively applied an amendment to a statute of limitations that shortened a filing period even absent clear congressional intent. We reasoned that a statute of limitations "generally" does not create

15

presumptively impermissible retroactive effects because it regulates "not the primary conduct of . . . defendants . . . but . . . the secondary conduct of . . . plaintiffs" and therefore "increase[s] neither party's liability, nor impose[s] any new duties with respect to past transactions." *Id.* at 890.

*In re Enterprise Mortgage Acceptance Co.*, a 2004 decision, retreated from that broad statement regarding the retroactive effects of a statute of limitations in a slightly different context. 391 F.3d at 406–10. The issue in *Enterprise* was whether an amendment to a statute of limitations that extended a filing period applies retroactively to revive civil claims that expired under the old limitations statute. *Id.* at 406. We held that it did not absent clear congressional intent. *Id.* at 410. We reasoned that "[e]xtending the statute of limitations" for antecedent conduct would upset settled expectations and fail to protect reasonable reliance interests because it would " 'increase[] a defendant's liability for past conduct' by increasing the period of time during which a defendant can be sued." *Id.* (brackets and citation omitted) (quoting *Landgraf*, 511 U.S. at 280). We found that observation to be "particularly prevalent" where the extended statute of limitations revived claims that were fully extinguished under the prior statute. *Id.*; *see also Stogner*, 539 U.S. at 618 (noting the "general rule" that "where a complete defense has arisen under a statute of limitations, it cannot be taken away by a subsequent repeal thereof" (brackets omitted))).

This case differs from both *Vernon* and *Enterprise*. Unlike *Vernon*, in which the new statute shortened the old filing period, the 2003 amendment to § 3283 extended the filing period for applicable sex abuse charges. And unlike *Enterprise*, in which applying the new statute retroactively would have revived an expired claim, the 2003 amendment to § 3283 extended the filing period for charges against Weingarten that had not yet expired

16

when the amendment was passed, since Doe turned twenty-two in 2003. Had Weingarten raised this retroactivity argument in his motion to dismiss, the District Court may have needed to determine, without any controlling Circuit or Supreme Court precedent, whether the logic of *Enterprise* extends to criminal cases where the defendant's statute of limitations defense had not vested when the limitations period was extended.

As at the first step of *Landgraf*, Weingarten may have been able to make colorable arguments that *Enterprise* does extend that far. He could have argued that a statute that retroactively extends the limitations period for viable claims also "increas[es] the period of time during which a defendant can be sued," thereby "increas[ing] a defendant's liability for past conduct." *See Enterprise*, 391 F.3d at 410 (brackets omitted) (quoting *Landgraf*, 511 U.S. at 280). Perhaps counsel could have convinced the District Court that increasing a statute of limitations expands the time when criminal charges may be filed regardless of the viability of the claim at the time the statute of limitations is amended.[7]

On the other hand, retroactively revoking a vested statute of limitations defense is different from retroactively extending the filing period for a still-viable claim. The vast weight of retroactivity decisions at the time of the motion to dismiss in this case support that view. Courts have routinely recognized a difference between revoking a vested statute of limitations defense and extending a filing period for live claims. *See, e.g., Hughes Aircraft*, 520 U.S. at 950 ("[E]xtending a statute of limitations after the pre-existing period of limitations has

---

[7] At least one court, in a decision that post-dates the motion to dismiss at issue on this appeal, has reached this conclusion. *Abarca v. Little*, 54 F. Supp. 3d 1064, 1069 (D. Minn. 2014).

expired impermissibly revives a moribund cause of action . . . .”); *Margolies v. Deason*, 464 F.3d 547, 553 (5th Cir. 2006) (limiting holding to expired claims without directly addressing viable claims); *In re ADC Telecomms., Inc. Sec. Litig.*, 409 F.3d 974, 977 & n.2 (8th Cir. 2005) (“[A] retroactive extension of a statute of limitations and revival of stale claims through retroactive application of a statute of limitations are different.”); *Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 538 (9th Cir. 1994) (“[W]e have recognized that a statute of limitations may not be applied retroactively to revive a claim that would otherwise be stale under the old scheme . . . .”); *cf. Stogner*, 539 U.S. at 618 (“Even where courts have upheld extensions of *unexpired* statutes of limitations . . . , they have consistently distinguished situations where limitations periods have *expired*.”). Had Weingarten prevailed on this retroactivity theory, the District Court would have been the first court to hold that retroactively extending a filing period for live charges is a presumptively impermissible retroactive effect under *Landgraf*. That novel holding would have been in direct conflict with a 2006 decision of the Ninth Circuit that held the same 2003 amendment to § 3283 applied retroactively to extend a filing period for charges that were still viable at the time of the amendment. *See United States v. Leo Sure Chief*, 438 F.3d 920, 924 (9th Cir. 2006).[8]

The state of authority on this issue shows that it was not clear at the time of Weingarten's motion to dismiss whether the 2003 version of § 3283 applied retroactively to extend a filing period for live charges. But because Weingarten failed to raise this complex issue in the first instance, it is not our place on this appeal to resolve it definitively. Rather, we hold that Weingarten

---

[8] After Weingarten's motion to dismiss, the Fourth Circuit reached a similar conclusion as the Ninth Circuit. *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014).

18

is not entitled to § 2255 relief on this theory because, given the lack of controlling authority on this difficult issue, Weingarten's retroactivity argument was not so obvious that it was objectively unreasonable for his trial counsel to forgo it in favor of others. The underlying merits question remains for another day, another case.

**2.**

Weingarten contends in the alternative that trial counsel clearly should have argued that the default five-year § 3282 limitations period, rather than the extended § 3283 limitations period, applies to prosecutions for § 2423 offenses. Section 3283 applies to any "offense involving the sexual . . . abuse . . . of a child." Weingarten argues Congress's use of the words "offense involving" compels courts to apply the categorical approach to determine whether § 3283 applies to a particular federal offense. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) ("[T]he 'categorical approach' . . . compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime . . . ."). He asserts that § 2423 offenses do not qualify categorically as "offense[s] involving the sexual . . . abuse . . . of a child" because they are crimes of intent, which do not require proof of actual sexual abuse to sustain a conviction. *See United States v. Broxmeyer*, 616 F.3d 120, 130 n.8 (2d Cir. 2010); *United States v. Han*, 230 F.3d 560, 563 (2d Cir. 2000). Therefore, Weingarten concludes, even though his offense conduct in fact involved sexual abuse of a child, the charges against him were not subject to the extended § 3283 limitations period.

It was not obvious at the time of Weingarten's motion to dismiss, nor is it today,[9] that a court must apply the categorical approach, rather than a fact-specific analysis, to determine whether an offense is subject to § 3282 or § 3283. As an initial matter, it is far from clear the categorical approach applies in the context of criminal statutes of limitations for child sex abuse cases. The Supreme Court's modern categorical approach jurisprudence is confined to the post-conviction contexts of criminal sentencing and immigration deportation cases. *See Descamps*, 133 S. Ct. at 2288 (explaining that the categorical approach avoids "serious Sixth Amendment concerns" under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that arise when a judge would make a post-conviction finding regarding underlying factual predicate). Weingarten cites no recent case law for the proposition that the categorical approach applies outside the post-conviction context.[10]

---

[9] *See United States v. Schneider*, 801 F.3d 186, 195–97 (3d Cir. 2015) (declining to apply the categorical approach to decide whether a § 2423(b) offense falls under § 3283).

[10] Weingarten's sole support outside the sentencing and immigration contexts is *Bridges v. United States*, 346 U.S. 209 (1953), in which the Supreme Court applied an "essential ingredient" test to determine whether an offense qualified for a provision in the Wartime Suspension of Limitations Act (the "WSLA") that extended the criminal limitations period for certain fraud offenses. *Id.* at 222. Weingarten provides no support for his contention that the "essential ingredient" test and the categorical approach are the same. In any event, *Bridges* is distinguishable. The Court there believed applying the restrictive "essential ingredient" test to determine if an offense "involv[ed] the defrauding of the United States" effectuated Congress's specific intent to limit the WSLA's extended limitations period to only a few offenses. *Id.* at 215–16 ("The legislative history of [the WSLA] emphasizes the propriety of its conservative

Even if the categorical approach does apply outside of the sentencing and immigration contexts, it was and is not clear that § 3283 calls for it. *Taylor v. United States*, 495 U.S. 575 (1990), established the modern doctrine for when to apply the categorical approach. *Taylor* held that 18 U.S.C. § 924(e)—a provision of the Armed Career Criminal Act that enhanced sentences for felons in possession of firearms in violation of 18 U.S.C. § 922(g) who were previously convicted of certain predicate offenses—required courts to apply the categorical approach for three reasons: (1) the language of § 924(e) referred to previous "convictions" rather than previous offenses a person "has committed," which indicated that Congress was focused on the legal charges rather than the underlying conduct; (2) the legislative history of the provision revealed Congress favored a categorical approach for defining § 924(e) predicate offenses; and (3) applying a fact-based approach to § 924(e) posed "daunting" "practical difficulties and potential unfairness." 495 U.S. at 600–02; *see also Descamps*, 133 S. Ct. at 2287–89 (describing "three grounds for establishing [an] elements-centric, 'formal categorical approach' ").

None of these conditions is met here. First, unlike § 924(e), § 3283 refers to offenses that "involv[e]" certain abusive conduct, rather than certain convictions. *Leocal v. Ashcroft*, 543 U.S. 1 (2004), stands as another counter-example. The *Leocal* Court applied the categorical approach to a statute that defined whether a prior conviction qualified as a "crime of violence" by referring to the prior "offense," the "element[s]" of that offense, and the "nature" of that offense. *Id.* at 7 (quoting 18 U.S.C. § 16) (emphasis omitted). The language of § 3283, by contrast, reaches beyond the offense and its legal elements to the conduct

interpretation."). As explained below, Congress had the opposite intention for § 3283.

"involv[ed]" in the offense. That linguistic expansion indicates Congress intended courts to look beyond the bare legal charges in deciding whether § 3283 applied.[11]

Second, Weingarten points to nothing in the legislative history of § 3283 that indicates Congress favored the categorical approach. To the contrary, in passing recent statutes related to child sex abuse, including extensions of the § 3283 limitations period, Congress "evinced a general intention to 'cast a wide net to ensnare as many offenses against children as possible.'" *Schneider*, 801 F.3d at 196 (quoting *United States v. Dodge*, 597 F.3d 1347, 1355 (11th Cir. 2010) (en banc)). It would undermine that intention to apply the narrow categorical approach.

Third, it would present no practical difficulty or unfairness to apply a fact-based approach to § 3283. The *Taylor* Court was concerned that looking into the factual predicate of prior convictions, which could have been procured by guilty plea or by general jury verdict on multiple alternative theories of criminal liability, would pose too great an obstacle for a court sentencing a defendant for a later § 922(g) conviction. 495 U.S. at 601–02. A district court or jury reviewing a § 3283 statute of limitations defense would have no such difficulty. All they would be required to do is decide whether the indictment alleged or the Government proved at trial that the defendant

---

[11] That Congress used the word "involving" in § 3283 does not necessarily mean it intended to trigger the categorical approach. "Involving" may be "entirely consistent" with applying the categorical approach, *Olivas-Motta v. Holder*, 746 F.3d 907, 915 (9th Cir. 2013), but it is equally consistent with applying a fact-based approach, *see Nijhawan v. Holder*, 557 U.S. 29, 38 (2009) (holding a statute that includes as an "aggravated felony" certain "offense[s] that . . . involve[] fraud or deceit" mandates "a circumstance-specific approach" (quoting 8 U.S.C. § 1101(a)(43)(M)(i))).

engaged in applicable abusive conduct. That would not implicate the problematic retrospective factual findings that concerned the *Taylor* Court.

Accordingly, it was not obvious that the categorical approach applied to § 3283.

## CONCLUSION

The District Court's order of March 8, 2016 denying Weingarten's § 2255 petition insofar as it pertains to the statute of limitations defense is AFFIRMED.