# United States Court of Appeals

## For the First Circuit

No. 17-2053

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID MILLER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann,* Judge.

Robert Herrick, with whom Nicholson Herrick LLP was on brief, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom Halsey B. Frank, United States Attorney, was on brief, for appellee.

December 28, 2018

---

*Of the United States Court of International Trade, sitting by designation.

**SELYA**, **Circuit Judge**. Defendant-appellant David Miller pleaded guilty to violating the Mann Act, 18 U.S.C. § 2423(a), by transporting his thirteen-year-old[1] adopted daughter across state lines in 1995 for immoral sexual purposes. The defendant had not yet been charged and the limitations period for his Mann Act violation was still open when Congress elongated the statute of limitations in 2003. "The mills of justice grind slowly, but they grind exceedingly fine," Vineberg v. Bissonnette, 548 F.3d 50, 59 (1st Cir. 2008), and the government eventually charged the defendant with the Mann Act violation in 2016. By then, the old statute of limitations had expired, but the new statute of limitations had not. The defendant entered a guilty plea, and the district court sentenced him to a 327-month term of immurement.

Represented by a new lawyer, the defendant argues for the first time on appeal that he received ineffective assistance of counsel in derogation of the Sixth Amendment because his trial attorney (now deceased) did not mount a defense premised on the statute of limitations in effect at the time of the offense.[2] But this argument runs headlong into a potential obstacle: the general

---

[1] Although the presentence investigation report states that the victim was twelve years old at the time of the crime, both the prosecution's version of the offense and the victim's testimony confirm that she was actually thirteen when the crime was committed.

[2] Apart from the ineffective assistance of counsel claim, this appeal does not take issue with any aspect of either the defendant's conviction or his sentence.

rule is that such a claim must first be raised in the district court, either during the proceedings leading to the defendant's direct appeal or after the conclusion of that appeal (typically, through a petition for post-conviction relief pursuant to 28 U.S.C. § 2255). Here, however, the claim was never raised at all in the district court. Consequently, our first task is to determine whether this case qualifies for an exception to the general rule. Because it is uncertain whether the 2003 amendment applies retrospectively to the defendant's conduct and because the record is opaque as to why trial counsel elected not to raise a limitations defense below, we conclude that the defendant's ineffective assistance of counsel claim ought not to be aired for the first time on direct appeal. Thus, we affirm the defendant's conviction and sentence; without prejudice, however, to his right to raise his claim of ineffective assistance of counsel in a collateral proceeding brought pursuant to 28 U.S.C. § 2255. We do not decide the limitations issue.

## I. BACKGROUND

We briefly rehearse the relevant facts. On November 30, 2016, a federal grand jury sitting in the District of Maine charged the defendant with two counts of transporting a minor with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). Specifically, the indictment charged that in

June and July of 1995, the defendant knowingly transported a child across state lines with the intent to sexually assault her.

In 1995, the statute of limitations for the charged crime allowed prosecution until the victim reached twenty-five years of age.  See 18 U.S.C. § 3283 (1994).  Since the victim in this case would have turned twenty-five no later than sometime in 2007, the statute of limitations would have expired during that year.  The legal landscape shifted in 2003, when Congress extended the statute of limitations for Mann Act violations to allow prosecution for the duration of the life of the child victim.  See id. (2003).

The defendant originally maintained his innocence. During the pretrial proceedings, his attorney demonstrated an awareness that the applicable statute of limitations had changed mid-stream and indicated that he "wanted to look at the statute of limitations issue one final time."  Ultimately, the attorney eschewed a limitations defense and, on June 1, 2017, the defendant entered a guilty plea to one of the charged counts.  The district court sentenced the defendant to 327 months in prison and, at the same time, dismissed the remaining count lodged in the indictment. The defendant timely appealed, and at his request, this court appointed new counsel under the Criminal Justice Act.  See 18 U.S.C. § 3006A.

- 4 -

**II. ANALYSIS**

We begin with constitutional bedrock: the Sixth Amendment guarantees "the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). The Supreme Court has crafted a two-pronged inquiry as a means of evaluating ineffective assistance of counsel claims: "[f]irst, the defendant must show that counsel's performance was deficient," and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. This two-pronged inquiry has equal relevance with respect to ineffective assistance claims in both tried cases and cases resolved by guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To establish deficient performance by an attorney in a criminal case, the defendant must show that the attorney's representation was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Pertinently, when "an attorney fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands." Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999). To satisfy the prejudice requirement, the defendant must show "a reasonable probability

- 5 -

that, but for counsel's errors, he would not have pleaded guilty." Hill, 474 U.S. at 59.

Here, however, there is an antecedent question as to timing — a question that asks whether, as a prudential matter, the defendant should be allowed to raise his ineffective assistance of counsel claim for the first time on appeal. The general rule is that "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). Thus, a criminal defendant who wishes to pursue a claim of ineffective assistance not advanced in the trial court is ordinarily required to defer that claim to collateral proceedings. See id.; see also 28 U.S.C. § 2255.

This general rule — like most general rules — admits of exceptions. The exception that the defendant attempts to invoke provides that "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim, an appellate court may dispense with the usual praxis and determine the merits of such a contention on direct appeal." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991). Since the applicability of this exception must be gauged case by case, we turn next to the particulars of the defendant's ineffective assistance claim.

Stripped of rhetorical flourishes, the defendant's position is that his trial counsel was ineffective because the defendant had available a meritorious limitations defense but counsel turned a winner into a loser by neglecting to raise that defense.[3]  So, the defendant says, this case fits the exception because no further development of the record is needed:  any lawyer worth his salt would have advanced such a limitations defense.

In weighing this claim, a useful starting point is to consider whether it can be said with assurance that the amended version of the statute of limitations (enacted in 2003 and which had not yet expired when the defendant was charged) applies to the defendant's 1995 offense.  If so, further development of the record would be a waste of time and the Natanel exception would be available.  Cf. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic.").  If, however, it is less than certain that the amended version of the statute of limitations was available to the government, a material question would persist

---

[3] The defendant does not challenge the advice given to him by his trial counsel in connection with his guilty plea.  He does not allege, for example, that his plea was other than knowing and voluntary because his attorney failed to advise him of a possible limitations defense.  Instead, his claim rests exclusively on the argument that his trial counsel should have moved to dismiss the indictment on limitations grounds — a step that he submits likely would have borne fruit and resulted in a dismissal of the charges prior to his tendering of a guilty plea.

as to why the defendant's trial counsel did not raise a limitations defense; the vitality of the ineffective assistance claim would depend on idiosyncratic facts (including trial counsel's justification, if any, for failing to mount such a defense); and the availability of the Natanel exception would hinge on whether the information in the record was sufficient to permit a reasoned evaluation of the defendant's ineffective assistance claim. See, e.g., United States v. Leahy, 473 F.3d 401, 410 (1st Cir. 2007) (finding that "narrow" Natanel exception did not apply where record "contain[ed] nothing approaching an adequate elaboration of why counsel adopted the course that he followed"); United States v. McGill, 952 F.2d 16, 19 (1st Cir. 1991) (finding Natanel exception inapplicable where "[t]he relevant facts, especially those concerning the reasons behind trial counsel's adoption of certain strategies, [we]re unclear").

Against this backdrop, we turn to the statutory construction question. Applying a statute of limitations enacted in 2003 to conduct that occurred in 1995 requires a retrospective application of the 2003 statute. Following the Supreme Court's lead, see Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994), we assess the validity of such an application through a two-step approach.

The first step in the Landgraf approach involves "determin[ing] whether Congress has expressly prescribed the

- 8 -

statute's proper reach." Id. If Congress has clearly prescribed an intention to give — or not to give — the statute retrospective effect, the statute must be construed as Congress has ordained. See Lattab v. Ashcroft, 384 F.3d 8, 14 (1st Cir. 2004). Although "Congress's intention [must] be unmistakable, our inquiry is not limited to the statutory text but may include an examination of standard ensigns of statutory construction, such as the statute's structure and legislative history." Id. If, however, such a clear directive cannot be gleaned, the second step in the approach comes into play. The question then becomes whether applying the statute retrospectively would have impermissible effects. See id. Specifically, Landgraf instructs an inquiring court to ask whether the proposed application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280.

With these principles in mind, we train the lens of our inquiry on the 2003 amendment. Some background lends perspective. The general statute of limitations for non-capital federal crimes is five years. See 18 U.S.C. § 3282(a). In 1990, Congress enacted 18 U.S.C. § 3509(k), which extended the five-year statute of limitations for crimes of child sexual abuse until the child victim reached twenty-five years of age. See Crime Control Act of 1990, Pub. L. No. 101-647, § 225, 104 Stat. 4789, 4805 (1990) ("EXTENSION

OF CHILD STATUTE OF LIMITATIONS. — No statute of limitation[s] that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years."). Approximately four years later, the text of the statute was recodified (without any substantive change) at 18 U.S.C. § 3283 (1994).

This brings us to 2003, when Congress amended section 3283. The amended version provided that: "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child." 18 U.S.C. § 3283 (2003). The Joint Conference Report prepared by the Senate and the House of Representatives, which accompanied the 2003 amendment, explained:

> The conference report amends the current law that covers the statute of limitations for offenses involving the sexual or physical abuse of a child. This section adds crimes of kidnapping and extends the statute of limitations to the life of the child victim. . . . Under current law, the standard limitation rules do not bar prosecution "for an offense involving the sexual or physical abuse of a child under the age of eighteen years . . . before the child reaches the age of 25 years." While this is better than a flat five-year rule, it remains inadequate in many cases. For example, a person who abducted and raped a child could not be prosecuted beyond this extended limit — even if DNA matching conclusively identified him as

the perpetrator one day after the victim
turned 25.

H.R. Rep. No. 108-66, at 54 (2003) (Conf. Rep.), <u>as reprinted in</u>
2003 U.S.C.C.A.N. 683, 688 (footnote omitted).[4]

We do not believe that a <u>Landgraf</u> analysis of the 2003
amendment yields a readily discernable result. To begin, neither
the amendment nor its legislative history expressly states that
the extension to the statute of limitations is to have
retrospective reach. At first blush, the wording of the statute
— "[n]o statute of limitations that would otherwise preclude
prosecution for an offense . . . shall preclude such prosecution
during the life of the child," 18 U.S.C. § 3283 (2003) — might be
thought to reflect an intent that the new limitations period apply
to all offenses for which the prior statute of limitations was
still open. But appearances can be deceiving, and in drafting an
amendment to a different statute with the same "otherwise preclude"
language, Congress included an explicit direction for
retrospective application. <u>See</u> Justice for All Act of 2004, Pub.
L. No. 108-405, § 204, 118 Stat 2260, 2271 (2004) (explaining that
"[t]he amendments made by this section [18 U.S.C. § 3297] shall
apply to the prosecution of any offense committed before, on, or

_____

[4] For the sake of completeness, we note that Congress again
amended the statute in 2006 to allow for prosecution "during the
life of the child, or for ten years after the offense, whichever
is longer." 18 U.S.C. § 3283 (2006). The 2006 amendment has no
bearing on this case.

after the date of the enactment of this section if the applicable limitation period has not yet expired").[5]  The fact that Congress thought it necessary to insert this clarifying statement when amending 18 U.S.C. § 3297 but omitted any such clarifying statement from the 2003 amendment to 18 U.S.C. § 3283, arguably introduces a modicum of ambiguity into the question of whether Congress intended section 3283 to apply retrospectively.  Cf. Carnero v. Bos. Sci. Corp., 433 F.3d 1, 8 (1st Cir. 2006) (finding no clear intent for extraterritorial application where Congress was silent with respect to particular statute but "provided expressly elsewhere in the [same] Act for extraterritorial enforcement of a different . . . statute").  And even though two courts of appeals have determined that Congress intended that the amended statute of limitations for crimes of child sexual abuse should be applied retrospectively, neither court grappled with Congress's explicit statement regarding the retrospective reach of section 3297.  See United States v. Leo Sure Chief, 438 F.3d 920, 923-25 (9th Cir. 2006); United States v. Jeffries, 405 F.3d 682, 684 (8th Cir. 2005).

---

[5] The 2004 amendment to 18 U.S.C. § 3297 added the following language:  "[i]n a case in which DNA testing implicates an identified person in the commission of a felony, . . . no statute of limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period." Justice for All Act § 204, 118 Stat at 2271.

There is another fly in the ointment.  As the defendant points out, the phrase "[n]o statute of limitations that would otherwise preclude prosecution," when read in historical context, is itself unclear:  it may refer only to preclusion by the five-year federal default statute of limitations (18 U.S.C. § 3282).  After all, in 1990 — when Congress first employed this critical language — the only existing limitations period to which the language could have referred was the default limit set forth in section 3282.  Employing identical language in 2003, then, arguably may have been intended to accomplish only the same result — precluding the application of the federal default statute — and no more.

There is, of course, another side to the story.  When enacting the 2003 amendment, Congress specifically identified the inadequacy of the then-existing (1994) statute of limitations as the very reason for fashioning the amendment.  See H.R. Rep. No. 108-66, at 54, as reprinted in 2003 U.S.C.C.A.N. at 688.  And when Congress has opted to distinguish a particular statute of limitations from section 3282, it frequently has used language specifically tailored to achieve that goal.  See, e.g., 18 U.S.C. § 1091(f) (stating that "[n]otwithstanding section 3282" an indictment for genocide may be brought "at any time without limitation"); id. § 3286(a) (prescribing eight-year statute of limitations for certain terrorism offenses "[n]otwithstanding

- 13 -

section 3282"); cf. Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 702 (1st Cir. 1994) (explaining that "[t]he omission of [specific language] looms particularly large in light of the use of that [language] elsewhere").

For present purposes though, the most important fact is that neither the statute nor the legislative history expressly states that the 2003 amendment is meant to have retrospective application. In the absence of such an express statement, the 2003 amendment arguably can be read as only preventing a prior statute of limitations from "preclud[ing] prosecution" of a prospective "offense." 18 U.S.C. § 3283 (2003).

Assuming, for argument's sake, that the defendant is able to clear this first Landgraf hurdle, the second step of the Landgraf analysis is equally hard to negotiate. This impediment is not surprising: as the Second Circuit aptly observed, it is "particularly difficult to categorize the presumptively impermissible effects of retroactively applying a statute of limitations." Weingarten v. United States, 865 F.3d 48, 56 (2d Cir. 2017), cert. denied, 138 S. Ct. 1309 (2018). The problem becomes dicier because "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" Toussie v. United States, 397 U.S. 112, 115 (1970) (quoting United States v. Habig, 390 U.S. 222, 227 (1968)). The lone reported decision to analyze the interplay between Landgraf and Toussie with respect to an

- 14 -

extension of a statute of limitations determined that when these cases "are read in conjunction," a court "must interpret the statute of limitations in a manner favoring repose for Defendant." United States v. Gentile, 235 F. Supp. 3d 649, 655 (D.N.J. 2017). In other words, when Congress has sounded an uncertain trumpet, a court ought to refrain from applying an enlarged criminal statute of limitations retrospectively. See id. Seen in this light, Toussie potentially alters the second step in the Landgraf approach. Cf. Arevalo v. Ashcroft, 344 F.3d 1, 10 & n.6 (1st Cir. 2003) (suggesting that "[i]n criminal cases, other rubrics [beyond Landgraf] may apply").

At the end of the day, the reach of the 2003 amendment is uncertain.[6] This uncertainty casts a long shadow over the ineffective assistance claim: a limitations defense, if successful, "would have furnished [the defendant] a complete defense to the entire indictment." Weingarten, 865 F.3d at 53. So the next question that must be asked is: why did the defendant's trial counsel refrain from asserting such a defense?

---

[6] Let us be perfectly clear. We do not hold that the 2003 amendment to 18 U.S.C. § 3283 applies — or does not apply — to conduct that occurred prior to 2003 but as to which the previous limitations period was still open at the time of the amendment. For present purposes, it is enough to conclude that the answer to this question is uncertain and that, therefore, the defendant may have had a viable limitations defense.

On this meager record, the answer to this question remains an enigma. We are left to guess at trial counsel's thought processes, especially since we are unable to discern any strategic or tactical reason for spurning the defense. When all is said and done, we know little more than that trial counsel chose not to file a motion to dismiss. Given the potential potency of the limitations defense, the indicia of uncertainty that we have catalogued, the dearth of controlling case law, and our inability to evaluate the ineffective assistance claim without some insight into trial counsel's reasoning,[7] we conclude that resort to the Natanel exception is unwarranted.

This conclusion is not inconsistent with Weingarten. There, the court ruled that an attorney's failure to raise the same limitations issue did not constitute ineffective assistance of counsel. See 865 F.3d at 58. But the defendant in that case advanced his ineffective assistance claim in the district court by way of a section 2255 petition. Consequently, the appellate court — unlike this court — had the benefit of a developed factual record and did not face the threshold question of whether an ineffective

_____

[7] Although the defendant's trial counsel is now deceased, it may still be possible to flesh out the record. For example, a review of counsel's file and notes might shed light on his decision to eschew a limitations defense. So might testimony from his partners, associates, or co-workers. In any event, the defendant himself likely could testify about any strategic discussions that he and his attorney may have had. See Tse v. United States, 290 F.3d 462, 463-64 (1st Cir. 2002) (per curiam).

assistance claim could be entertained for the first time on direct review.[8]

**III. CONCLUSION**

We need go no further. Concluding, as we do, that it would be imprudent for us to attempt to adjudicate the defendant's ineffective assistance of counsel claim on direct review without a developed record, we hold that this case falls within the confines of the general rule, not within the narrow Natanel exception. Accordingly, we affirm the judgment below; without prejudice, however, to the defendant's right to raise his claim of ineffective assistance of counsel, if he so desires, in a collateral proceeding brought pursuant to 28 U.S.C. § 2255.

**So Ordered.**

---

[8] Notwithstanding Weingarten's different procedural posture, the Second Circuit appears to share our concern about the uncertainty surrounding the limitations issue. After all, the Weingarten court found that issue to be "murky," 865 F.3d at 56, and concluded that the defendant "may have been able to make a colorable argument" in support of a limitations defense, id. at 55.